IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| GERALD A. SANFORD, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 12-2685-JDT-tmp |
| ) | |
| DERRICK SCHOFIELD, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Plaintiff Gerald A. Sanford, Sr., an inmate who was formerly confined at the West Tennessee State Penitentiary ("WTSP"), filed a pro se complaint pursuant to 42 U.S.C. § 1983. On March 19, 2013, the court severed the claims against Phillip Seals, Sergeant David Breece, Sergeant David Gary, Corporal Charlie Jones, Officer Tibbs, Officer Brewer, Jason Staggs, Bruce Coats, Sergeant Amanda Staggs, Sergeant Jason Clendenion, Ronnie Williams, Warden Jerry Lester, Deputy TDOC Commissioner Jason Woodall, and TDOC Commissioner Derrick Schofield that allegedly arose from events that occurred at the Turney Center Industrial Complex ("TCIX") and transferred those claims to the United States District Court for the Middle District of Tennessee; dismissed the claims based on actions at WTSP against Defendants Corporal Lawson, Corporal Hankins, Officer Blackwell, Deputy WTSP Warden Wayne Carpenter, Unit Manager Margaret Smith, Assistant TDOC Commissioner Jason Woodall, WTSP Assistant Warden Tommy Mills, and former TDOC

Commissioner Reuben Hodge; and ordered service of process on Officer Brian Taylor, Officer Jelks, Officer Josh Lovelady, Corporal Maubry,[1] Captain Sharon Wilson, and Nurse Jane [DE# 10]. On July 8, 2013, Nurse Jane and Corporal Maubry were dismissed from the action [DE# 32]. On November 15, 2013, the court granted Plaintiff's motion to voluntarily dismiss Carla Jelks as a defendant [DE# 60].

Defendants Lovelady, Taylor, and Wilson (the only remaining defendants) have filed a motion to dismiss and/or for summary judgment [DE# 132]. Plaintiff has filed a response to the motion [DE# 150]. For the reasons set forth below, Defendants' motion is GRANTED.[2]

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or

---

[1] Defendant Corporal Maubry's correct name appears to be "Corporal Mawby." The complaint and docket sheet use the spelling "Maubry," and, therefore, the court has also used that spelling in this order.

[2] Because the court has considered matters outside the pleadings, the court has decided the motion under the summary judgment standard.

other materials;[3] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In Celotex Corp., the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In his complaint, Plaintiff alleges that, on October 21, 2011, WTSP Officers Taylor, Jelks, and Lovelady arrived at his cell to transport him to the property room. Plaintiff alleges that, when he advised Defendant Lovelady that his wrists required a bigger set of handcuffs

4

or two sets of handcuffs, Lovelady slammed the pie flap on his hands. Plaintiff further alleges that, after he was handcuffed, Defendant Lovelady began bumping him as they were walking, even though he asked Defendant to stop. When Plaintiff complained about Defendant Lovelady's actions, former Defendant Corporal Maubry grabbed Plaintiff by the handcuffs and shoved Plaintiff into a corner with Defendant Lovelady's assistance. Plaintiff alleges that former Defendant Maubry and Defendant Lovelady attempted to choke him and pulled and twisted on the handcuffs. Plaintiff alleges that Defendant Taylor was present during the assault but failed to intervene.

Plaintiff alleges that Defendant Wilson took him to the nurse, who denied him medical care. Plaintiff alleges that Defendant Wilson limited the number of pictures taken of his injuries. Plaintiff allegedly did not receive medical treatment until he was transferred to another institution and continues to need treatment for the injuries that he sustained. Plaintiff alleges that Defendant Wilson was on notice of abusive conduct by Maubry and Lovelady but failed to discipline them or control their behavior.

In their motion, Defendant argue that they did not violate Plaintiff's civil rights. In support of their argument, Defendants have presented the following statement of undisputed facts [DE# 132-9.][4]

Plaintiff was told by Officer Lovelady that he needed to pack his belongings because

---

[4] Neither the complaint nor Plaintiff's response to Defendants' motion is verified. Furthermore, Plaintiff has presented no affidavits to rebut Defendants' statement of facts.

he was going to be transported to another institution. Lovelady Affidavit, ¶ 3.[5] When Officer Lovelady returned to Plaintiff's cell to retrieve him, Plaintiff refused to be handcuffed. Id. ¶ 4. Officer Lovelady left to inform Captain Wilson that Plaintiff was refusing to be restrained. When Lovelady returned, another officer had managed to restrain Plaintiff. Id. ¶ 5. However, Plaintiff was upset because Officer Lovelady would not allow him to be restrained in front of his body and would not use two sets of connected handcuffs, which Plaintiff contended were necessary due to his large size. Id. ¶ 4.

Eventually, Plaintiff was removed from his cell and was being escorted to the transportation area when he started hollering, cursing, and causing other inmates in his pod to become unruly. Id. ¶ 8. When Officer Lovelady placed his hand on Plaintiff's elbow, Plaintiff became irate and yelled at Officer Lovelady to get his hands off him. Id. Other inmates began to holler and kick on their cell doors; Plaintiff tried to jerk away from the officers and then attempted to "walk-through" Corporal Maubry, who was assisting Defendant Lovelady. Affidavit of Norman Layne, TOMIS Incident Report. Because Corporal Maubry had repeatedly asked Plaintiff to stop his abusive behavior and then Plaintiff assaulted Corporal Maubry, it was necessary for the officers to take Plaintiff to the ground to regain control of him. Id. Captain Wilson was summoned to assist in handling the situation.

Plaintiff was examined twice by prison medical staff, pursuant to TDOC policy.

---

[5] The notarized copy of Defendant Lovelady's affidavit is found at docket entry number 136-2.

Affidavit of Sharon Wilson, ¶ 3. Immediately after Plaintiff was taken to the ground, he was seen in his unit by Nurse Collins. Plaintiff's Medical Record, p. 1. Plaintiff complained that his wrists hurt because the handcuffs were too tight, but his skin was intact, and there were no marks on his wrists. Id. Nurse Collins noted that there was room between the handcuffs and Plaintiff's wrists. Id.

Plaintiff was seen again at 8:45 in the prison clinic. Id. p. 24. Nurse Collins "observed cuff's [with] room to move, [no] marks noted. Assessed inmate and sent back to cell." Id. There is no mention of cuts, bleeding, or injuries to any other part of Plaintiff's body in the record. Id.

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits the wanton and unnecessary infliction of pain upon prisoners. Whitley v. Albers, 475 U.S. 312, 319-20 (1986) The unjustified infliction of bodily harm on a prisoner by a correctional officer gives rise to a claim under § 1983. Caldwell v. Moore, 968 F.2d 595, 599 (6th Cir. 1992); Franklin v. Aycock, 795 F.2d 1253, 1258 (6th Cir. 1986). However, the mere fact that a prisoner was subjected to physical contact does not, by itself, show an Eighth Amendment violation, Parrish v. Johnson, 800 F.2d 600, 604-05 (6th Cir. 1986), and the good faith use of physical force in pursuit of valid penological goals rarely, if ever, violates the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

In order to show an Eighth Amendment violation, a prisoner must prove both that he suffered an objectively serious injury and that the defendants acted with a sufficiently culpable state of mind in applying the force complained about. Farmer v. Brennan, 511 U.S.

825, (1994); Hudson v. McMillian, 503 U.S. 1, 8, (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). With respect to the subjective element of an Eighth Amendment claim, the core inquiry is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. Courts have recognized that the use of force in such a volatile and dangerous setting as a prison facility is sometimes unavoidable. Id. at 6.

In the present case, Defendants have presented unrefuted evidence that Plaintiff was taken to the ground with the least amount of force necessary, only after he became unruly, attempted to jerk away from the officers escorting him, and attempted to "walk through" an officer. Defendant Officer Lovelady used only the force necessary to maintain order in the prison and, therefore, is entitled to summary judgment on Plaintiff's excessive force claim.

In the complaint, Plaintiff alleges that Officer Taylor was present when Officer Lovelady began assaulting him by "bumping" into him. Plaintiff also alleges that Officer Taylor told him, "Hold on, I'm trying to get you out of here as fast as I can," but never told Officer Lovelady to stop and did not intervene when Officer Lovelady allegedly assaulted him. However, in his deposition, Plaintiff testified that Officer Taylor, "never laid a finger on him," Sandford Depo., p. 24, l. 5, 6, and that Officer Taylor just stood in the hallway watching him get assaulted. Id. p. 22, l. 20. Later, he testified that Officer Taylor might have assaulted him, but he was not sure. Id. p. 30, l. 9-11.

In order to establish that Defendant Officer Taylor violated Plaintiff's constitutional right based on a failure to intervene, Plaintiff must show that Defendant was aware of facts

8

which would have alerted him that there was a substantial risk that another person was going to seriously harm Plaintiff. Farmer v. Brennan, 511 U.S. 825, 838(1994); Quigley v. Tuong Vinh Thai, 707 F. 3d 675, 681 (6th Cir. 2013); Turner v. Scott, 119 F. 3d 425, 429 (6th Cir. 1997). Thus, Plaintiff must show that Officer Taylor was actually aware of the substantial risk of serious harm that would have been caused by the excessive force, Defendant was deliberately indifferent to that substantial risk of serious harm, and Defendant had the opportunity and means to prevent the harm from occurring. Id.

Defendant Officer Taylor is entitled to summary judgment because Plaintiff has not established the elements of a failure to intervene claim. There is no evidence in the record that Plaintiff was punched, kicked, or choked, and the medical record reflects no discernable injury immediately after the incident. Plaintiff's Medical Record, pp. 1, 24. Officer Taylor cannot recall seeing Plaintiff being subjected to excessive force, nor does he recall any incident at all, involving Plaintiff. Taylor Affidavit, ¶ 3. Because there is no evidence that Plaintiff was subjected to unjustified force or that Officer Taylor witnessed the force and had an opportunity to prevent it, the court grants the portion of Defendants' motion seeking judgment as a matter of law in favor of Officer Taylor.

Plaintiff alleges that Defendant Captain Wilson escorted him to the prison infirmary to see a nurse but purposely had "limited pictures taken" of his injuries. He also alleges that she refused to remove his handcuffs so that his alleged injuries could be photographed. He further alleges that he could not receive proper medical treatment because of the handcuffs.

Defendants have presented unrefuted evidence that Captain Wilson was called to the

unit after incident to assist with getting Plaintiff to medical, photographing his injuries, and ensuring that the requisite paperwork was completed. Wilson Affidavit, ¶ 7. Captain Wilson brought the camera to photograph Plaintiff. Id. ¶ 8. There is no evidence that Captain Wilson deviated from prison policy in regard to photographing a prisoner's injuries.

Captain Wilson escorted Plaintiff to the clinic and did not observe any injury to him or his wrists. Wilson Affidavit, ¶ 9. Plaintiff's medical records show that the prison nurse, Nurse Collins, examined Plaintiff and found no injuries. Nurse Collins found that Plaintiff had adequate room in between the handcuffs and his wrists. The claim that Captain Wilson prohibited the nurse from assessing Plaintiff's injuries is refuted by the Accident/Incident/Traumatic Injury Report and the nurse's notes, both recorded within fifteen minutes of the use of force. Plaintiff's Medical Record, pp. 1, 24. As noted by Defendants, handcuffs are not such a device that could conceal an injury, if there actually was one. Any injuries could be seen without having to remove the restraints. Moreover, prison policy prohibited Captain Wilson from removing Plaintiff's restraints based on his security classification.

Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103, (1976). This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. As such, deliberate indifference to a serious medical need is the proper

standard for Eighth Amendment claims based on a refusal to provide medical treatment. Id. at 105. In the present case, the unrefuted evidence shows that Captain Wilson was not deliberately indifferent to Plaintiff's serious medical needs.

Finally, Plaintiff complains of the manner in which Captain Wilson handled his grievance. He alleges that she was negligent "for not acknowledging the assault and denial of medical care in the grievance." Allegations that a defendant mishandled a grievance or failed to investigate a complaint fail to state a claim under § 1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). A "combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." Henry v. Pogats, 1994 WL 462129, at *2 (6th Cir. 1994). Therefore, Captain Wilson is entitled to judgment as a matter of law on this claim, as well as the deliberate indifference claim.

Defendants have presented unrefuted evidence that they did not violate Plaintiff's rights and, therefore, are entitled to judgment as a matter of law. Accordingly, Defendants' motion to dismiss and/or for summary judgment [DE# 132] is GRANTED. The clerk is DIRECTED to enter judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE